**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JASON LEOPOLD,<br><br>             Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>             Defendant. | Civil Action No. 1:14-cv-01988 (RJL) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO <u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

<u>**INTRODUCTION**</u>

Plaintiff Jason Leopold seeks expedited processing of a Freedom of Information Act ("FOIA") request plaintiff submitted to the Executive Office for U.S. Attorneys ("EOUSA"), a component of defendant U.S. Department of Justice ("DOJ" or the "Department"). That request sought documents relating to Loretta Lynch, the U.S. Attorney for the Eastern District of New York, and to that office's investigation and prosecution of HSBC Bank on money-laundering charges. DOJ denied plaintiff's request for expedited processing.

The Court should affirm this decision and grant judgment on this issue in favor of defendant as a matter of law. Plaintiff did not demonstrate to DOJ that his FOIA request deserved expedited treatment. First, he failed to show that the subject of his FOIA request raised questions about the government's integrity which affect public confidence, as required for expedited processing pursuant to 28 C.F.R. § 16.5(d)(1)(iv). The mere fact that there was public

debate about the prosecutorial decisions made in the HSBC case does not raise genuine questions of government integrity. Second, plaintiff failed to show that there was an "urgency to inform" the public about the subject of his FOIA request, as required for expedited treatment under 28 C.F.R. § 16.5(d)(1)(ii). He did not explain why or how the records he requested would provide additional information reasonably pertinent to Ms. Lynch's confirmation process that was not already publicly available.

For these reasons, and those set forth at length below, plaintiff's motion for partial summary judgment should be denied, and defendant's cross-motion for partial summary judgment should be granted.

## BACKGROUND

### I.   STATUTORY AND REGULATORY FRAMEWORK

#### A.   Expedited Processing Under FOIA

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis. In 1996, Congress amended the FOIA to provide for "expedited processing" of certain categories of requests. *See* Electronic Freedom of Information Amendments of 1996, Pub. L. 104-231, § 8 (*codified at* 5 U.S.C. § 552(a)(6)(E)) ("EFOIA"). Expedition, when granted, entitles requestors to move immediately to the front of an agency processing queue, ahead of requests filed previously by other persons (but in the queue of any other expedited requests).

As part of EFOIA, Congress directed agencies to promulgate regulations providing for expedited processing of requests for records in the following circumstances: (i) "in cases in which the person requesting the records demonstrates a compelling need," 5 U.S.C.

§ 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency," *id*. § 552(a)(6)(E)(i)(II). The statute defines "compelling need" (subsection (E)(i)(I)) to mean:

> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or
>
> (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

*Id*. § 552(a)(6)(E)(v). The "other cases determined by the agency" provision (subsection (E)(i)(II)) gives agencies "'latitude to expand the criteria for expedited access' beyond cases of 'compelling need.'" *Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 307 n.7 (D.C. Cir. 2001) (quoting Electronic Freedom of Information Amendments of 1996, H.R. Rep. No. 104-795, at 26 (1996)).

In enacting EFOIA, Congress specified that the expedited processing categories should be "'narrowly applied.'" *Al-Fayed*, 254 F.3d at 310 (quoting H.R. Rep. No. 104-795, at 26). As the D.C. Circuit explained in *Al-Fayed*, "Congress' rationale for a narrow application is clear: 'Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment.' . . . Indeed, an unduly generous approach would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." 254 F.3d at 310 (quoting H.R. Rep. No. 104-795, at 26).

When a request for expedited processing is filed, the agency must determine whether to grant the request, and give notice of the determination, within ten days of the request. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I). The requestor bears the burden of showing that expedition is

3

appropriate. *See Al-Fayed*, 254 F.3d at 305 n.4 (quoting H.R. Rep. No. 104-795, at 25). The agency's decision to deny or to affirm denial of a request for expedited processing is subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii). Such judicial review "shall be based on the record before the agency at the time of the determination." *Id*.

The standard for reviewing agency decisions to deny expedition depends on the ground for the decision. A decision denying expedited processing for failure to establish "compelling need" under Section 552(a)(6)(E)(i)(I) is reviewed de novo. *See Al-Fayed*, 254 F.3d at 307. A decision denying expedited processing for failure to meet criteria established by an agency under Section 552(a)(6)(E)(i)(II) is reviewed under a more deferential "reasonableness" standard. *See Al-Fayed*, 254 F.3d at 307 n.7 (noting that, "to the extent [the agency FOIA] regulations expand the criteria for expedited processing beyond 'compelling need,' the agencies reasonably determined that plaintiffs' requests did not meet the expanded criteria").

### B. Department of Justice Regulations

DOJ's regulations, which govern FOIA requests directed to EOUSA (*see* 28 C.F.R. § 16.1(b)), provide that "[r]equests and appeals" will be "taken out of order and given expedited treatment whenever it is determined that they involve":

  (i)  Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

  (ii)  An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information;

  (iii)  The loss of substantial due process rights; or

> (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

28 C.F.R. § 16.5(d)(1). Categories (i) and (ii) implement the statutory "compelling need" standard; categories (iii) and (iv) define additional categories for expedition. *See* Revision of Freedom of Information Act and Privacy Act Regulations and Implementation of Electronic Freedom of Information Act Amendments of 1996, 63 Fed. Reg. 29,591, 29,592 (1998).

As Congress recognized, agency decisions regarding expedited processing depend on "factual and subjective judgments about the circumstances cited by requestors to qualify them for 'expedited processing.'" H.R. Rep. No. 104-795, at 26. Accordingly, DOJ requires requestors to "explain[] in detail the basis for requesting expedited processing." 28 C.F.R. § 16.5(d)(3); *see also* H.R. Rep. No. 104-795, at 26 ("the requestors will need to explain in detail their basis for seeking such treatment"). For requests based on urgency (category (ii) above), the requestor "must establish a particular urgency to inform the public about the government activity involved in the request, beyond the public's right to know about government activity generally." 28 C.F.R. § 16.5(d)(3); *see also* H.R. Rep. No. 104-795, at 26. A requestor within category (ii) who is not a full-time member of the news media must also establish that he or she "is a person whose main professional activity or occupation is information dissemination, though it need not be his or her sole occupation." 28 C.F.R. § 16.5(d)(3).

Requests for expedition based on categories (i), (ii), and (iii) must be submitted to the component that maintains the records requested. *See* 28 C.F.R. § 16.5(d)(2). Requests for expedition based on category (iv) – the Department's "special media-related standard" (*see* 63 Fed. Reg. at 29,592) – must be submitted to the Director of the Department's Office of Public

Affairs ("OPA").  *See* 28 C.F.R. § 16.5(d)(2).  This enables "the Department's media specialists [to] deal directly with matters of exceptional concern to the media."  63 Fed. Reg. at 29,592.

## II. PLAINTIFF'S FOIA REQUEST AND REQUEST FOR EXPEDITED PROCESSING

### A. Plaintiff's Request

By letter dated November 10, 2104, and received on November 12, 2014, plaintiff submitted a FOIA request to the Executive Office for United States Attorneys requesting records related generally to Loretta Lynch, then the United States Attorney for the Eastern District of New York ("EDNY").  Pl.'s Mot. for Partial Summ. J., Exh. 2 (Dkt. No. 11-2); Declaration of Vinay Jolly, EOUSA, FOIA/Privacy Act Unit ("Jolly Decl."), ¶ 4.[1]  Plaintiff requested an extensive assortment of records, including the following categories of records:  (1) records relating to the EDNY U.S. Attorney's Office's ("USAO's") investigation and prosecution of a money laundering case against HSBC Bank USA NA and HSBC Holdings plc that was eventually docketed as 1:12-cr-00763 (EDNY); (2) any communications relating to HSBC or the case to or from Ms. Lynch, the assigned Assistant United States Attorneys, HSBC and its attorneys, and/or HSBC's independent monitor; (3) guidelines, policies or training materials mentioning when the USAO may, can, or should offer deferred prosecution agreements or other pretrial diversion; (4) Ms. Lynch's personnel file; and (5) "any records contained in USA-001/administrative files" mentioning Ms. Lynch.  Dkt. No. 11-2, at 1-2.

Immediately prior to the plaintiff's request, on November 9, 2014, the President had nominated Ms. Lynch for the position of United States Attorney General.  Pl.'s Mot. for Partial

---

[1] A copy of the Jolly Declaration is being filed with the present motion.  The same Declaration was originally filed with Defendant's Memorandum in Opposition to Plaintiff's Expedited Motion for Preliminary Injunction, as Dkt. No. 17-1.

Summ. J., Exh. 3 (Dkt. No. 11-3). Plaintiff is an investigative reporter for VICE News, an on-line news service. *Id.* Exh. 4 (Dkt. No. 11-4), ¶ 2. He allegedly is seeking the requested records to, among other things, inform Ms. Lynch's confirmation process. Pl.'s Partial Summ. J. Mem. (Dkt. No. 11) 7-8, 9.

Plaintiff's FOIA request contained a request for expedited processing. Pl's Mot. for Partial Summ. J., Exh. 2 (Dkt. No. 11-2), at 1. Plaintiff principally requested expedited processing pursuant to DOJ regulation 28 C.F.R. § 16.5(d)(1)(iv) (the "media-related" standard) based on "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." *Id.* at 1, 4-5. In addition, he requested expedited processing pursuant to 28 C.F.R. § 16.5(d)(1)(ii), based on "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." *Id.* at 5-6.

### B. DOJ's Response to Plaintiff's Expedited Processing Request

By letter dated December 19, 2014, EOUSA informed plaintiff that both it and OPA had denied plaintiff's request for expedited processing because his letter did not "detail any circumstances that would allow" granting the request. Jolly Decl. ¶ 12 & Exh. D. EOUSA attached a checklist from OPA addressing his request for expedited processing under the "media-related standard," indicating that OPA had found "widespread and exceptional media interest" in the subject matter of plaintiff's request but had also found that the material sought did not raise "possible questions about the government's integrity which affect public confidence." *Id*. ¶ 9 & Exhs. C & D. EOUSA further denied plaintiff's request for expedited processing under the "urgency to inform" standard because he "did not present sufficient evidence in his request to

establish that the documents he requested or any matters in Ms. Lynch's personnel or administrative file would be necessary to assess her qualifications at her confirmation hearing." Jolly Decl. ¶ 11. The letter notified plaintiff of his appeal rights. *Id.* ¶ 12 & Exh. D. To date, no appeal has been filed. *Id.* ¶ 13.

### C. Court Proceedings

Plaintiff filed the instant action on November 24, 2014. Initially, plaintiff sought only a declaratory judgment that he is entitled to expedited processing of his request. Compl. p. 8. On December 22, 2014, plaintiff amended the Complaint to add a count directed at the agency's withholding of records. Am. Compl. (Dkt. No. 10) ¶¶ 25-26, 30. On the same date, plaintiff moved for partial summary judgment on the issue of his entitlement to expedited processing (Dkt. No. 11). Defendant sought, and received, extensions of time until February 4, 2015, to respond to the Amended Complaint and to plaintiff's motion for partial summary judgment.

On January 16, 2015, plaintiff learned that Ms. Lynch's confirmation hearings had been set for January 28-29, 2015. Pl.'s Mot. for Prelim. Inj. (Dkt. No. 16) 1. He then filed a motion on January 20, 2015, seeking a preliminary injunction ordering defendant to grant his request for expedited processing and to release all non-exempt records by January 26, 2015. Pl.'s Mot. for Prelim. Inj., Proposed Order (Dkt. No. 16-1). A hearing on plaintiff's preliminary injunction motion is set for February 6, 2015.

## ARGUMENT

## PLAINTIFF FAILED TO SATISFY THE STANDARDS FOR EXPEDITED PROCESSING

Plaintiff failed to satisfy the standards for expedited processing under either 28 C.F.R. § 16.5(d)(1)(iv), DOJ's "media-related" standard, or 28 C.F.R. § 16.5(d)(1)(ii), the "urgency to

8

inform" standard. Accordingly, defendant's decision to deny his expedited processing request should be upheld and defendant is entitled to summary judgment on this claim.

    **A.**    <u>**Plaintiff Failed to Satisfy the DOJ Media-Related Standard**</u>

Plaintiff primarily sought expedited processing under 28 C.F.R. § 16.5(d)(1)(iv). Dkt. No. 11-2, at 1, 4-5. Under this provision, the Department expedites treatment whenever it determines that a FOIA request involves "[a] matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." Requests for expedition under § 16.5(d)(1)(iv) are addressed by DOJ's Office of Public Affairs, and OPA's decisions are reviewed for reasonableness. *See Al-Fayed,* 254 F.3d at 307 n.7.

Here, OPA concluded that the subject matter of plaintiff's request was "[a] matter of widespread and exceptional media interest" but also found that the material sought did not raise "possible questions about the government's integrity which affect public confidence." Jolly Decl. Exh. D. This decision is reasonable and should be sustained by the Court. Plaintiff asserted that the subject matter of his FOIA request raises questions of government integrity because the handling of the HSBC prosecution "suggests a two-tiered legal system exists: one for ordinary American citizens and another for powerful institutions such as HSBC." Dkt. No. 11-2, at 5. In support of this view, plaintiff cited an excerpt from a Wall Street Journal article. *Id.* (quoting http://www.wsj.com/articles/profile-of-attorney-general-pick-loretta-lynch-tenacious-and-fair-1415406152). However, that excerpt does not suggest any impropriety in the USAO's handling of the HSBC investigation. Rather, the excerpt quoted by plaintiff in his letter states only that Ms. Lynch's office "has been the center of some of the Justice Department's major

cases against banks" and identifies the HSBC case as well as a settlement with Citigroup. Dkt. No. 11-2, at 5. Standing alone, therefore, plaintiff's letter did not establish his entitlement to expedited processing.

Indeed, the full Wall Street Journal article undercuts plaintiff's claims of government impropriety. Rather than assailing Ms. Lynch as unfair, the article praises her "as a disciplined and thoughtful lawyer whose office has managed sensitive and ambitious cases with care." http://www.wsj.com/articles/profile-of-attorney-general-pick-loretta-lynch-tenacious-and-fair-1415406152. Plaintiff's claim that Ms. Lynch's office's handling of the HSBC cases raises questions of government integrity was therefore completely unsubstantiated and was accordingly properly rejected by OPA. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 322 F. Supp. 2d 1, 5-6 & n.7 (D.D.C. 2003) (holding that one example of congressional criticism and bare allegations of impropriety do not raise sufficient questions of government integrity), *jdgmt. vacated*, 2004 WL 2713119 (D.C. Cir. 2004).

To be sure, elsewhere in his request, plaintiff cited criticism of the treatment given to HSBC proffered by banking experts, editorialists, and congressmen. Dkt. No. 11-2, at 4. But such criticism is not enough to raise a genuine question of government integrity impacting on public confidence. A prosecutor's decisions regarding whether to investigate and prosecute a case are wholly discretionary ones, which will be based on the prosecutor's considered evaluation of a host of both public and nonpublic factors. *See, e.g., United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); *Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986) ("The power to decide when to investigate, and when to prosecute, lies at

the core of the Executive's duty to see to the faithful execution of the laws."). That some may disagree with such decisions, and express those disagreements in the press, does not mean that government integrity has been called into question sufficient to shake public confidence.

In general, "[t]he presumption of regularity supports" prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citation omitted). To be sure, a decision whether to prosecute may raise legitimate questions of government propriety if it "based on 'an unjustifiable standard such as race, religion, or other arbitrary classification,'" or represents "administration of a criminal law . . . 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962), and *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886)). But plaintiff presented no such evidence here. *See also Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (requester "must establish more than a bare suspicion," that is, "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred," in order to establish a sufficient public interest to overcome FOIA Exemption 7(C)'s protection of personal privacy). This case is thus distinguishable from the case plaintiff relies upon, *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004), where the requestor presented evidence that "members of Congress have '*continually* charged that abuses were taking place'" (emphasis added). Moreover, the Court's decision in the latter case was heavily influenced by the fact that

11

the Department had granted expedited processing for an earlier, similar request, s*ee id.* at 32-33, a factor not present here.

Finally, plaintiff did not attach copies of the articles or other evidence he relied upon to his letter. Instead, plaintiff merely cited to the articles and provided the internet address for the article. It was plaintiff's burden to demonstrate that its request for expedited processing was warranted. *See Al-Fayed*, 254 F.3d at 305 n.4 (quoting H.R. Rep. No. 104-795, at 25); *see also* 28 C.F.R. § 16.5(d)(3) (burden is on requestor to explain in detail the basis for requesting expedited processing). Plaintiff's failure to provide copies of the articles was a sufficient reason alone for EOUSA to deny its request under 28 C.F.R. § 16.5(d)(1)(ii). The burden is not on EOUSA to hunt down the numerous articles in order to accurately analyze plaintiff's claims.

  **B.**  <u>**Plaintiff Also Failed to Satisfy the "Urgency to Inform" Standard**</u>

Both EFOIA and DOJ regulations also provide for expedited processing of FOIA requests made by persons "primarily engaged in disseminating information" that involve an "urgency to inform" the public about an actual or alleged federal government activity. 5 U.S.C. § 552(a)(6)(E)(v)(II); 28 C.F.R. § 16.5(d)(1)(ii). In keeping with the congressional mandate that the categories for compelling need are to be narrowly applied, Congress described the "urgency to inform" standard as follows:

> The standard of "urgency to inform" requires that the information requested should pertain to a matter of a current exigency to the American public and that a reasonable person might conclude that the consequences of delaying a response to a FOIA request would compromise a significant recognized interest. The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard.

H.R. Rep. No. 104-795, at 26; *see also Al-Fayed*, 254 F.3d at 310.  Thus, courts consider three factors in determining whether a requestor has demonstrated "urgency to inform":  (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.  *Al-Fayed*, 254 F.3d at 310.  Review of an agency's decision that a request poses no "urgency to inform" is de novo but the factors are to be narrowly applied.  *Id.* at 310-11.  This Court's review is restricted to the record as it existed before EOUSA at the time it made its determination.  5 U.S.C. § 552(a)(6)(E)(iii); *Al-Fayed*, 254 F.3d at 304.

      Plaintiff's request for expedited processing under § 16.5(d)(1)(ii) was properly denied because he did not show that the material he requested was a matter of "current exigency" to the American public or that failure to expedite the processing of his FOIA request "would compromise a significant recognized interest." [2] *Al-Fayed*, 254 F.3d at 310.  Plaintiff's submission implied that the "recognized interest" he was relying on is the public interest in thoroughly assessing Ms. Lynch's qualifications to be Attorney General.  However, plaintiff did not allege sufficient facts in his request for expedited processing to establish that the documents he requested relating to HSBC would be necessary for such an assessment.  Jolly Decl. ¶ 11.  As the articles cited by plaintiff demonstrate, the basic facts regarding the investigation and decision not to prosecute HSBC are matters of public record and the prosecutorial decisions made have already been the subject of public discussion.  Moreover, there is much additional, readily

---

[2] Defendant does not dispute that Plaintiff's request concerns "federal government activity."

available material concerning HSBC that plaintiff does not cite.[3]  Plaintiff does not explain why and how additional information is necessary for informed and meaningful debate about the decisions made in that case.  *Id.*; *see Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 277-78 (D.D.C. 2012) (rejecting claims to expedited processing and a preliminary injunction where requestor could act based on already-public information).  Indeed, he fails to identify any kind of responsive material that would add to this debate.  Nor did plaintiff provide any reason why matters in Ms. Lynch's personnel or administrative file would be necessary for a fully informed confirmation process.

For all of these reasons, therefore, the Department properly concluded that plaintiff did not establish an urgency to inform the public as to the particular information sought in his request.  *See Landmark*, 910 F. Supp. 2d at 277 (rejecting claim of urgency based on upcoming presidential election "given the breadth of issues at play in a presidential election").  Again, the touchstone – mandated by statute – is urgency, 5 U.S.C. § 552(a)(6)(E)(v)(II), and plaintiff did not establish a urgent need for the specific information requested.  *See Al-Fayed*, 254 F.3d at 310 (subject, while "newsworthy," was not a matter of "current exigency").  By itself, "[t]he public's right to know, although a significant and important value" is not sufficient to satisfy the "urgency to inform" standard.  *See* H.R. Rep. No. 104-795, at 26; *Al-Fayed*, 254 F.3d at 310; *see also* 28 C.F.R. § 16.5(d)(3) (a requestor under § 16.5(d)(1)(ii) "must establish a particular urgency to

---

[3] *See* Documents and Resources from the December 11, 2012, HSBC Press Conference, http://www.justice.gov/opa/documents-and-resources-december-11-2012-hsbc-press-conference (last visited Jan. 20, 2015); Opinion and Order, *United States v. HSBC Bank USA, N.A.*, No. 12-Cr-763 (E.D. N.Y. July 1, 2013), http://www.justice.gov/usao/nye/pr/2013/doc/HSBC%20Memorandum%20and%20Order%207.1.13.pdf.  Other pleadings from *United States v. HSBC Bank USA, N.A.* are available to paying subscribers on PACER.

inform the public about the government activity involved in the request, beyond the public's right to know about government activity generally").

Finally, as a practical matter, plaintiff cannot show that he will likely receive virtually any information, significant or non-significant, as a result of the completed processing of his FOIA request. As Mr. Jolly explains, the agency has already preliminarily identified several exemptions that might bar the release of most, if not all, of the documents requested, including Exemption 7(A) (for records relating to ongoing law enforcement proceedings) and Exemption 4 (for confidential commercial information). Jolly Decl. ¶ 15. In light of the small amount of nonexempt material likely available, therefore, it would be inefficient and futile for the Court to order expedited processing here. In addition, the Senate Judiciary Committee hearing addressing Ms. Lynch's qualifications has concluded.

## CONCLUSION

For all of the foregoing reasons, defendant respectfully requests that the Court deny plaintiff's motion for partial summary judgment and grant defendant's cross-motion for partial summary judgment. Defendant further requests that the Court grant defendant judgment in its favor as a matter of law on plaintiff's request for expedited processing, holding that plaintiff is not entitled to expedited processing.

Dated:  February 4, 2015

                          Respectfully submitted,

                          JOYCE R. BRANDA
                          Acting Assistant Attorney General
                          Civil Division

                          /s/ Carol Federighi
                          ELIZABETH J. SHAPIRO
                          Deputy Director
                          CAROL FEDERIGHI
                          Attorney
                          United States Department of Justice
                          Civil Division, Federal Programs Branch
                          P.O. Box 883
                          Washington, DC 20044
                          Phone: (202) 514-1903
                          Email: carol.federighi@usdoj.gov

                          *Counsel for Defendant*