UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, | ) |
| | ) |
| PLAINTIFF | ) Civil Action No. 1:14-cv-1988 (RJL) |
| vs. | ) |
| | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | ) |
| | ) |
| DEFENDANT | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff seeks expedited processing of his FOIA request pertaining to Loretta Lynch pursuant to 28 C.F.R. § 16.5(d)(1)(ii) and (iv). Because Plaintiff is entitled to expedited processing under both provisions, his motion for partial summary judgment should be granted, and Defendant's cross-motion should be denied.


A.  Expedited processing based on an urgent need to inform the public

Under category (ii), a FOIA requester is entitled to expedited processing if the request involves "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." Plaintiff is a reporter at VICE News, and is therefore a person primarily engaged in disseminating information. Defendant does not dispute that Plaintiff meets this requirement of category (ii), nor does it dispute that the request involves actual or alleged federal government activity. Instead, Defendant's only argument as to category (ii) is that Plaintiff has failed

to demonstrate an urgency to inform the public. Specifically, Defendant argues that Plaintiff did not show that the material he requested was a matter of "current exigency" to the American public or that failure to expedite the processing of his FOIA request "would compromise a significant recognized interest." (Def. Opp. at 13.)

In *Al-Fayed v. CIA*, 254 F.3d 300, 311 (D.C. Cir. 2001), the D.C. Circuit held that the FOIA requester had failed to show "current exigency" as to records relating to the deaths of Princess Diana and Dodi Al Fayed: "All of the events and alleged events occurred two to three years before plaintiffs made their requests for expedited processing. Although these topics may continue to be newsworthy, none of the events at issue is the subject of a currently unfolding story." *Id.* In contrast, the topics of Mr. Leopold's FOIA request, Loretta Lynch and HSBC, are the subjects of currently unfolding stories. As to Ms. Lynch, she is in the midst of being confirmed to be the next U.S. Attorney General. As to HSBC, the deferred prosecution agreement remains in place and the law enforcement proceedings against the bank are "ongoing" (Jolly Decl. ¶ 15).

Also in *Al-Fayed*, the D.C. Circuit held "that the record does not contain any news reports on the subject of the United States Attorney's alleged refusal to prosecute[.]" *Id.* Here, Plaintiff's request for expedited processing included numerous news reports on the subject of the U.S. Attorney's refusal to prosecute. (Jolly Decl. Ex. A.)

The story of Ms. Lynch's involvement with the HSBC deal continued to unfold last week, as Ms. Lynch responded as follows to a written question from Sen. Grassley in a February 9, 2015 letter:

> "38. As United States Attorney for the Eastern District of New York, you helped secure nearly $2 billion from HSBC over its failure to establish proper procedures to prevent money laundering by drug cartels and terrorists. You were

quoted in a DOJ press release saying, 'HSBC's blatant failure to implement proper anti-money laundering controls facilitated the laundering of at least $881 million in drug proceeds through the U.S. financial system.'

You stated that the bank's 'willful flouting of U.S. sanctions laws and regulations resulted in the processing of hundreds of millions of dollars in [Office of Foreign Assets Control]-prohibited transactions.' Still, no criminal penalties have been assessed for any executive who may have been involved.

a. Did you make any decision or recommendation on charging any individual with a crime?
i. If so, please describe any and all decisions or recommendations you made.
ii. Please explain why such decisions or recommendations were made.
b. If you did not make any decision or recommendation on charging any individual with a crime, who made the decision not to prosecute?

RESPONSE: On December 11, 2012, the Department filed an information charging HSBC Bank USA with violations of the Bank Secrecy Act and HSBC Holdings with violating U.S. economic sanctions (the two entities are collectively referred to as 'HSBC'). Pursuant to a deferred prosecution agreement ('DPA'), HSBC admitted its wrongdoing, agreed to forfeit $1.256 billion, and agreed to implement significant remedial measures, including, among other things, to follow the highest global anti-money laundering standards in all jurisdictions in which it operates. As the United States District Judge who approved the deferred prosecution found, 'the DPA imposes upon HSBC significant, and in some respect extraordinary, measures' and the 'decision to approve the DPA is easy, for it accomplishes a great deal.' Although grand jury secrecy rules prevent me from discussing the facts involving any individual or entity against whom we decided not to bring criminal charges, as I do in all cases in which I am involved, I and the dedicated career prosecutors handling the investigation carefully considered whether there was sufficient admissible evidence to prosecute an individual and whether such a prosecution otherwise would have been consistent with the principles of federal prosecution contained in the United States Attorney's Manual.

> I want to reiterate, particularly in the context of recent media reports regarding the release of HSBC files pertaining to its tax clients, that the Deferred Prosecution Agreement reached with HSBC addresses only the charges filed in the criminal information, which are limited to violations of the Bank Secrecy Act for failures to maintain an adequate anti-money laundering program and for sanctions violations. The DPA explicitly does not provide any protection against prosecution for conduct beyond what was described in the Statement of Facts. Furthermore, I should note the DPA explicitly mentions that the agreement does not bind the Department's Tax Division, nor the Fraud Section of the Criminal Division."

(Ex. 1.)

Even more recently, Senator David Vitter requested a hold-over, delaying the Senate Judiciary Committee's vote on Ms. Lynch's nomination. Senator Vitter sought the hold-over in order to obtain additional information about Ms. Lynch's role in the HSBC deal. On Friday February 13, 2015, Senator Vitter put out the following press release:

> "Vitter Asks Lynch To Explain HSBC Drug Money Laundering Agreement
>
> Friday, February 13, 2015
>
> (Washington, D.C.) – U.S. Senator David Vitter (R-La.), member of the Senate Judiciary Committee, followed up with new questions to U.S. Attorney General nominee Loretta Lynch about an agreement with megabank HSBC. In 2012, HSBC was charged with allowing a massive billion dollar money laundering scheme that involved Mexican drug cartels and international terrorist organizations. Lynch was the U.S. Attorney who chose not to bring any criminal charges, but instead appears to have simply accepted a monetary penalty.
>
> 'If Ms. Lynch wants to be the very top lawyer in the United States, she must explain how a simple monetary fine is severe enough punishment for a massive money laundering scheme involving Mexican drug cartels and terrorist

4

organizations,' Vitter said. 'Lynch, who was in charge of the settlement, completely ignored the serious tax evasion allegations against HSBC.'

Lynch was scheduled to receive a vote yesterday, but Vitter and others requested a hold-over. The vote on her confirmation was delayed and therefore Lynch is expected to answer follow up questions from Judiciary Committee members. Below is a copy of Vitter's follow up questions for the record.

Follow-up Questions for the Record to U.S. Attorney General Nominee Loretta Lynch

Lynch's Deferred Prosecution Agreement with HSBC for Tax Evasion and Money Laundering

United States Senator David Vitter
Friday, February 13, 2015

In your response to the Senate Judiciary Committee's 'Questions for the Record,' you explicitly noted that you were answering questions regarding the HSBC Deferred Prosecution Agreement (DPA) which you negotiated in lieu of criminal prosecution 'in the context of recent media reports regarding the release of HSBC files pertaining to its tax clients.' The media reports may be recent, but the knowledge of HSBC shielding clients from their tax liabilities was known to the U.S. Department of Justice at least as early as April 2010. Reports of these serious violations of U.S. law are nearly five years old, yet no criminal charges have ever been brought against HSBC for the alleged tax evasion scheme under your leadership of the Eastern District of New York.

1) When did the U.S. Department of Justice receive the leaked information from French authorities detailing HSBC's scheme to shield its clients from their tax liabilities?

2) When did you personally become aware of the HSBC leaked information detailing the tax evasion scheme?
If the media reports are correct, the U.S. Department of Justice received this information as early as 2010, yet in 2012 you negotiated a Deferred Prosecution Agreement with HSBC to avoid criminal prosecution only for the

5

crimes of money laundering and facilitating transactions with countries sanctioned by the U.S. It has been reported that you had full prior knowledge of HSBC's alleged earlier fraud and tax evasion violations.

3) Why did you choose not to immediately prosecute?

4) Given that HSBC admitted in the DPA to money laundering and conducting business with five countries sanctioned by the US, and given the strong evidence it also committed tax evasion, fraud and possibly other crimes, do you believe that HSBC's 'penalty' truly fits the severity of its conduct against the U.S.?

5) As has been noted, the HSBC DPA that your office negotiated while you were U.S. Attorney for the Eastern District of New York does not preclude future prosecutions for HSBC's other criminal violations for tax evasion, fraud or for failure to meet its duties and responsibilities under the DPA, but why, nearly 5 years after the Department of Justice became aware of the tax evasion scheme, have no criminal charges been brought?

The details of HSBC Money Laundering Deferred Prosecution Agreement has [sic] hardly been made public.

6) Exactly how much did HSBC profit from the transactions, loans, accounts, etc… associated with the money-laundering accusations included in the DPA?

7) Who in your office or at the Department of Justice determined the penalty paid by HSBC and how did they come to that amount?

8) What process was used to ensure that the penalty matches the crime?

9) If the alleged identity theft took place, during the course of HSBC's participation in a money laundering scheme, have all affected persons been notified?"

(Ex. 2.)

The recent questions from Sen. Chuck Grassley and Sen. David Vitter on the precise topics as to which Mr. Leopold has sought records demonstrate that there is an urgent need to inform the public about these issues.

B.  Expedited processing based on DOJ's Media-Related Standard

The government argues that Mr. Leopold cannot prevail under category (iv) because the request does not relate to a matter which raises "possible questions about the government's integrity which affect public confidence." The government argues that is so because prosecutors have broad discretion to determine how to prosecute cases and the newspaper articles cited raise only speculative concerns. While it may be true that prosecutors have discretion, the manner in which the discretion is exercised, even if not illegal, may raise questions about basic fairness and unequal treatment before the law. For example, it may not be illegal – but certainly raises concerns about the integrity of government – if an outgoing President pardons all of his friends on the final day of his term. In this case, the handling of the HSBC case implicates questions about the rule of law. The New York Times Editorial Board published an editorial headlined "Too Big to Indict." The editorial said, "It is a dark day for the rule of law. Federal and state authorities have chosen not to indict HSBC, the London-based bank, on charges of vast and prolonged money laundering, for fear that criminal prosecution would topple the bank and, in the process, endanger the financial system. They also have not charged any top HSBC banker in the case, though it boggles the mind that a bank could launder

money as HSBC did without anyone in a position of authority making culpable decisions."[1]

That lenient treatment was given to HSBC because of a belief that it was "too big to indict" is supported by the current Attorney General's own words: "I am concerned that the size of some of these institutions becomes so large that it does become difficult for us to prosecute them when we are hit with indications that if we do prosecute — if we do bring a criminal charge — it will have a negative impact on the national economy, perhaps even the world economy. I think that is a function of the fact that some of these institutions have become too large."

In a recent statement reported on February 12, 2015, Sen. Vitter questioned Ms. Lynch's fitness to lead the Justice Department based on her handling of the HSBC deal: "If Loretta Lynch and DOJ swept under the rug serious money laundering scheme involving Mexican drug cartels and terrorist organizations, **we need to know a heck of a lot more about it . . . .** A simple monetary fine is the equivalent of a slap on the wrist, and **would cast serious doubt on Ms. Lynch's capacity to serve** as our top law enforcement official." (Ex. 3.)

As to the government's concern that the newspaper articles raise concerns that are too speculative, courts have generally found similar types of evidence sufficient. For example, in *ACLU v. United States DOJ*, 321 F. Supp. 2d 24, 31-33 (D.D.C. 2004), the court found that a request for records about the USA PATRIOT Act raised "possible questions about the government's integrity which affect public confidence" based simply on the concerns of lawmakers and civil libertarians as reported in newspapers. The case

---

[1] http://www.nytimes.com/2012/12/12/opinion/hsbc-too-big-to-indict.html?_r=0

cited by Defendant, *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 322 F. Supp. 2d 1, 5-6 & n.7 (D.D.C. 2003) is distinguishable. In that case, the problem with the cited articles was a lack of specifics. *Id.* ("There is nothing in the record reflecting precisely what Representative Conyers said, or where, or when, nor was EPIC's counsel able at oral argument to provide specific information . . .") There is no similar lack of specifics here, as Plaintiff has quote from and cited to various newspaper articles reflecting precisely what is being said.

The government also contends that many of the records sought by Mr. Leopold will be exempt from disclosure. However, the issue of any exemptions is not before the Court. *Al-Fayed*, 254 F.3d at 303 (in expedited processing case "the merits of any exemptions from production they might eventually claim, are not before us.") Even if the Court did consider the possible applicability of exemptions, at least some of the documents sought by Plaintiff would clearly not be exempt, such as a copy of the USAO-EDNY's guidelines for offering diversion, and emails by and between the USAO-EDNY's office and HSBC's lawyers. As to other documents which may or may not be exempt, the burden of demonstrating the applicability of an exemption rests on the defendant and cannot be sustained simply by speculation that one or more exemptions might apply. In *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d 32, 46 (D.D.C. 2014), cited by Defendant, the requested documents were classified, making it exceedingly unlikely that they would be released. Here, there are certainly some releasable documents.

Finally, the government argues that much of the information about the HSBC deal is already in the public domain. However, the information that is already public about the HSBC case represents the information that the government chose to include in its filings

to the court. It therefore does not provide the whole picture of how the case was handled or the significance of any outside influences. As the questions from Sen. Vitter and Sen. Grassley demonstrate, there is still much information on the HSBC deal about which the public is unaware. As Sen. Vitter put it, "we need to know a heck of a lot more about it."

Respectfully Submitted,

 _/s/ Jeffrey Light_____

     Jeffrey L. Light
     D.C. Bar #485360
     1712 Eye St., NW
     Suite 915
     Washington, DC 20006
     (202)277-6213
     Jeffrey.Light@yahoo.com

     *Counsel for Plaintiff*