## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, | |
| Plaintiff, | Civil Action No. 1:14-cv-01988 (RJL) |
| v. | |
| U.S. DEPARTMENT OF JUSTICE, | |
| Defendant. | |

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff's memorandum opposing defendant's motion for partial summary judgment does not cure his failure to establish that he meets the requirements for expedited processing of his Freedom of Information Act ("FOIA") request.  Plaintiff has not established that the record before the agency at the time it denied his request for expedited processing showed either that there is an "urgency to inform" the public as to information that he thinks will be in any of the non-exempt records he requested, or that the subject of his request raises questions "about the government's integrity which affect public confidence."  *See* 28 C.F.R. § 16.5(d)(1)(ii), (iv). Accordingly, defendant's motion should be granted, and plaintiff's claim regarding expedited processing should be dismissed.

1.      First, the majority of plaintiff's recent filing should be rejected because it improperly expands the justification for expedited processing.  Specifically, in addressing the "urgency to inform" standard, plaintiff now cites discussions about "recent media reports regarding the release of HSBC files pertaining to its tax clients."  Pl.'s Opp. (Dkt. No. 23) at 4-6.

These recent news reports are not relevant because they pertain to a subject not implicated by plaintiff's FOIA request, namely, HSBC's attempt to shield clients from *tax* liability, which was not an issue in the case brought in the Eastern District of New York ("EDNY") that was the subject of plaintiff's request.  In any event, in reviewing the denial of plaintiff's request, the Court is limited to the record before the agency at the time it made its decision. 5 U.S.C. § 552(a)(6)(E)(iii).  The Court therefore may not consider subsequent developments, including Senator Grassley's February 9, 2015, letter, Ms. Lynch's response, and Senator Vitter's press release.  *See* Pl.'s Opp. at 2-6.

2.      Also with regard to the "urgency-to-inform" standard, plaintiff has not explained why the information already available in the public record about the HSBC is not sufficient to adequately inform Loretta Lynch's confirmation process.  In response to defendant's arguments on this point, plaintiff states only that "information that is already public about the HSBC case represents the information that the government chose to include in its filings to the court" and that such information "therefore does not provide the whole picture of how the case was handled."  Pl's Opp. at 9-10.

But plaintiff ignores that there exists considerable pertinent information in the public record that was *not* generated by the EDNY for filing in the HSBC case.  For example, there is the 334-page Senate report cited in plaintiff's Amended Complaint (¶ 10), which contains an extensive description of HSBC's anti-money-laundering and anti-terrorist-financing deficiencies. *See* Staff of S. Permanent Subcomm. on Investigations, Comm. on Homeland Security & Governmental Affairs, U.S. Vulnerabilities to Money Laundering, Drugs, and Terrorist Financing: HSBC Case History (Comm. Print 2012).  This report offers an independent version

of HSBC's conduct, which, even if also government-generated, is sufficient to allow assessment of the decisions made by the prosecution in the EDNY.

Indeed, the "whole picture of how the case was handled" is not necessary for plaintiff's purposes, even if he could obtain such information about prosecutorial decisions. Plaintiff wants to know if HSBC, a "powerful institution," was treated differently from "ordinary American citizens." Pl.'s Partial Summ. J. Mem. (Dkt. No. 11) at 9. The answer to this question can be obtained from the factual information regarding HSBC's conduct that is already in the public record and the details of the deferred prosecution agreement in this and other cases. Delving into the prosecutors' subjective motivations as plaintiff seeks to do would, even if permissible, serve no useful purpose.

3.      Plaintiff also asserts that the publicly available information does not reveal "the significance of any outside influence." Pl's Opp. at 10. However, his implication that there were "outside influences" at work in the HSBC case is completely speculative. There is no evidence of improper outside influences in the handling of the HSBC case, and plaintiff has not even uncovered any suggestions by opinion writers that there were such influences. *See* Exh. A to Jolly Decl. (Dkt. No. 17-1), at 4 (suggesting only that concerns about the negative impact on the economy played an undue role). A request for expedited processing cannot be granted based on such unsubstantiated claims.

4.      As presented in his original FOIA request, plaintiff's justification for expedited processing under the "government integrity" standard relied primarily on opinions expressed either by newspapers, by banking experts, or by political officials. *See* Exh. A to Jolly Decl., at 4 (citing statement by international banking expert Jack Blum; *New York Times* editorial;

statements by Senator Grassley and Attorney General Eric Holder); Pl.'s Opp. at 7 (citing *New York Times* editorial).  The Blum, Grassley, and Holder statements are expressly prefaced by qualifiers indicating that the statements were firmly intended to be taken as opinions only.  *See id.* (Blum statement prefaced by "I'd say"; Grassley and Holder statement prefaced by "I'm concerned"); *see also Ollman v. Evans*, 750 F.2d 970, 986 (D.C. Cir. 1984) ("statements found [on the editorial or Op-Ed page] are not 'hard' news like those printed on the front page or elsewhere in the news sections of the newspaper").  Such statements of opinion have no probative weight on the issue of government impropriety and therefore cannot alone support a request for expedited processing.   Nor are such statements -- by editorialists, political leaders, and experts -- indicative of "widespread public concern," such as was found in *American Civil Liberties Union v. United States Department of Justice*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004) (citing over 150 local resolutions), or indeed, of *any* public concern with this topic.

5.        Finally, under either standard, plaintiff's concern to inform the public does not take into account that the Senate is also involved here and, as plaintiff himself admits, is looking into "the precise topic as to which Mr. Leopold has sought records."  Pl.'s Opp. at 7; *see id.* at 2-7 (describing the Senate's inquiries).  Moreover, plaintiff admits that he is only seeking non-exempt records and that there may only be "some releasable documents."  *Id.* at 9.  Plaintiff has not explained why his duplicative efforts, which likely will result in a meager harvest, are entitled to expedited treatment, to the detriment of other requestors.

Dated:  February 25, 2015

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General
Civil Division

/s/ Carol Federighi
ELIZABETH J. SHAPIRO
Deputy Director
CAROL FEDERIGHI
Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendant*